UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DALE ROBERT JAVINO,                              :
                                                 :
                    Plaintiff,                   :
                                                 :           MEMORANDUM AND ORDER
        -against-                                :
                                                 :           07-CV-0574 (WFK) (ETB)
NEW YORK STATE DEPARTMENT OF                     :
ENVIRONMENTAL CONSERVATION,                      :
ROBERT YEAGER, OFFICER MEAD, TOWN                :
OF ISLIP, JOSEPH CANIZZARO AND OTHERS :
WHOM WILL BE GLEANED THROUGH                     :
DISCOVERY,                                       :
                                                 :
                    Defendants.                  :
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

      Dale Javino ("Plaintiff") brings this action under 42 U.S.C. § 1983 against the New York

State Department of Environmental Conservation ("DEC"); DEC employees Robert Yager[1] and

Nathaniel Mead (the "DEC Employee Defendants"); the Town of Islip (the "Town") and the

Town's Ordinance Inspector, Joseph Canizzaro (the "Town Defendants"), claiming that

Defendants violated his property rights by failing to consider in a timely manner a permit

application filed with the Town's Building Department, issuing a stop work order in connection

with excavation work on Plaintiff's property, and entering Plaintiff's property without his

permission and without a warrant. By order dated March 31, 2008, this Court dismissed DEC

from this action. Currently pending before this Court are Plaintiff's motion for summary

judgment, and two cross-motions for summary judgment by the DEC Employee Defendants and

the Town Defendants. For the reasons stated below, this Court denies Plaintiff's motion for

---

[1] Mr. Yager's name was incorrectly spelled in the original complaint. DEC Empl. Defs.' R. 56.1 St. p. 1.

summary judgment in its entirety, and grants the summary judgment motions of both the DEC

Employee Defendants and the Town Defendants, in their entirety.

## BACKGROUND

Plaintiff owns five parcels of industrial land in the Town of Islip ("the Town"). Compl.

at ¶ 1.

### *The Permit Application*

On September 10, 2001, Plaintiff submitted a permit application to the Town's Building

Department requesting permission to use the property for outdoor storage and to clear the land.

*Id.* at ¶ 18; Pl.'s R. 56.1 St. at ¶ 1; Decl. of Laurel Kretzing ("Kretzing Decl."), Ex. 3 (complaint

in *Javino v. Town of Islip* ("*Javino I*"), No. 4 CV 1776, including permit application as exhibit).

Nine days later, the Town denied Plaintiff's permit application. Kretzing Decl., Ex. 4. Plaintiff

did not learn about the denial until 2004, when the Town sent Plaintiff a letter informing him that

the permit had not been issued and directing him to submit an updated application if he still

wished to obtain a building permit. *Id.*, Ex. 5 (letter from Plaintiff to the Court in *Javino I*,

informing the Court that Plaintiff was never notified of the denial of his permit application); *id.*,

Ex. 3 (including 2004 letter as exhibit).

On April 28, 2004, Plaintiff filed an action ("*Javino I*") before this Court alleging that the

Town's Building Department had failed to process his permit application in a timely manner.

Kretzing Decl., Ex. 3. However, by letter dated July 5, 2005, Plaintiff withdrew his complaint in

*Javino I*, stating that he understood his permit application had been denied because it requested

outside storage, which was not permitted under the property's current zoning. Kretzing Decl.,

Ex. 5. Plaintiff indicated that he intended to work with the Town's attorney and Planning

2

Department to comply with all zoning and building regulations. *Id.* Based on the Plaintiff's withdrawal of his complaint, this Court dismissed the earlier action. *Javino I*, No. 4 CV 1776, Dkt. No. 11. After Plaintiff withdrew *Javino I*, the City gave Plaintiff the rezoning application form, but Plaintiff did not apply for rezoning of the property nor file any other permit applications. Kretzing Decl., Ex. 7 ("Pl.'s Dep."), at 28:15–30:23, 35:14–36:8.

### The Stop Work Order

On January 30, 2007, the Town's Ordinance Inspector, Joseph Canizzaro, issued Plaintiff a stop work order with respect to excavation work that was taking place on Plaintiff's property. *Id.*, Ex. 6 (stop work order). The stop work order indicates that the excavation work was in violation of Chapter 15, Section 3 of the Town Code. *Id.*

### The Trespass Allegations

On February 5, 2007, Defendants Yager and Mead, two employees of DEC, went to Plaintiff's property after receiving a complaint from a neighbor that there was a large hole on Plaintiff's property adjacent to the neighbor's land. DEC Empl. Defs.' R. 56.1 St. at ¶¶ 5–6. The neighbor expressed concern that his chain link fence might cave in as a result of the hole. *Id.* at ¶ 5.

Plaintiff's property was surrounded by a chain link fence. DEC Empl. Defs.' Summ. J. Br., Ex. 2 (photographs). While standing on the street adjacent to Plaintiff's property, Yager and Mead observed through the fence a large hole on Plaintiff's property from which sand and gravel had been excavated. *Id.* at ¶ 7. This hole was approximately forty feet wide by forty feet long, and about thirty feet deep. Javino Dep. at 92:5–12; DEC Empl. Defs.' R. 56.1 St. at ¶¶ 9–11.

Plaintiff did not have a permit for this excavation, which appeared to have removed more than 750 cubic yards of earth. Javino Dep. at 92:13–21; DEC Empl. Defs.' R. 56.1 St. at ¶¶ 4, 15.

When Yager and Mead arrived at Plaintiff's property, the gate to the fence was open. DEC Empl. Defs.' R. 56.1 St. at ¶ 14. Yager and Mead did not see any "No Trespassing" signs posted. *Id.* Concerned about possible illegal mining on the property and the possibility that the excavation might cause a cave-in, Yager and Mead entered Plaintiff's property through the open gate. *Id.* at ¶¶ 15–16. Mead walked around the hole and estimated its size. *Id.* at ¶ 17. Yager and Mead sought to take measurements of the hole, but before they had a chance, an individual approached them with a cell phone and said that the owner of the property was on the other end of the line and wanted to speak with them. *Id.* at ¶ 18; Compl. at ¶ 11. After the owner determined by phone that Yager and Mead did not have a warrant, he asked them to leave. Compl. at ¶ 11; DEC Empl. Defs.' R. 56.1 St. at ¶ 20. Yager and Mead left. DEC Empl. Defs.' R. 56.1 St. at ¶ 24. They did not take any soil samples. *Id.* at ¶ 23. In all, Yager and Mead were on the property for no more than twenty minutes. *Id.* at ¶ 24.

### *Procedural History*

Plaintiff filed this action on February 8, 2007. On March 31, 2008, the Court held that DEC, as a state agency, is immune from suit and dismissed DEC from this action. The Court further held that Plaintiff may seek only injunctive, and not monetary, relief from Yager and Mead. The Court did not determine whether the conduct of Yager and Mead had violated the Fourth Amendment.

4

## SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## ANALYSIS

**I.   Plaintiff's Claim Against the Town of Islip for Failing to Consider His Permit Application is Dismissed**

In order to bring an action for "equal protection and due process claims asserted in the context of land use challenges," a plaintiff must demonstrate that his claim is "ripe." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002). "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action." *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 148 (E.D.N.Y. 2006) (Cogan, J.).

In *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, the Supreme Court established a two-prong test to assess the ripeness of a Fifth Amendment regulatory taking of a property interest claim. 473 U.S. 172, 186, 194–95 (1985). The first prong requires a finding that the state regulatory "entity charged with implementing the regulations has reached a final decision." *Id.* at 186. The second prong requires a finding that plaintiff has sought just compensation by means of "reasonable, certain and adequate" state procedures. *Id.* at 194–95. The *Williamson County* test has since been extended to land use challenges based on equal protection or due process. *Dougherty*, 282 F.3d at 88; *see also Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349–50 (2d Cir. 2005).

In determining whether a decision is final, a court must determine whether a plaintiff has pursued all local administrative remedies available to him or her. *See, e.g., Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) (Conner, J.) ("In order to have a final decision, a development plan must be submitted, considered and rejected by the governmental entity. Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property.") (internal

quotation marks and citation omitted). "The rationale behind the finality requirement is that a court cannot determine whether a Plaintiff has been deprived of property arbitrarily or otherwise, until it has a final definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question." *R–Goshen LLC v. Village of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (McMahon, J.), *aff'd sub nom, R–Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir. 2004); *see also Williamson Cnty.*, 473 U.S. at 186–89, n.11 (explaining that until a final decision is reached "it is impossible to tell whether the land retained any reasonable beneficial use"). Moreover, such judicial restraint ensures that local administrative authorities, which are better situated to resolve land use disputes, have an opportunity to address these issues without unnecessary judicial intervention. *See Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 348–49 (2d Cir. 2005) ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."); *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 400 (E.D.N.Y. 2008) (Bianco, J.) (observing that "land use and zoning disputes . . . are quintessential local issues that, with certain limited exceptions, are properly left in the first instance to local bodies that are better equipped than federal courts to address and resolve such issues.").

For example, in *Williamson County*, the plaintiff sued a regional planning commission alleging that the commission's application of various zoning laws and regulations to the plaintiff's property amounted to an unconstitutional "taking" under the Fifth Amendment. *See* 473 U.S. at 175. Though the planning commission rejected the plaintiff's development plan, the Court noted that the plaintiff could have sought a variance or a permit from a local government agency that would have resolved many of the commission's objections. *Id.* at 187–88. Because

the plaintiff did not apply for such a variance, the Court found that he had not received a "final, definitive" decision regarding how the commission would allow the property to be developed. *Id.* at 191, 199–200; *see also Dougherty*, 282 F.3d at 89 (concluding that there had been no final decision because plaintiff never sought a variance); *Goldfine*, 80 F. Supp. 2d at 159 (holding that there had "been no final decision because plaintiff has yet to apply to the DEP for the necessary approval for his subdivision").

In this case, Plaintiff alleges that the Town of Islip breached his property rights, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution, when it failed to review and answer the building permit he submitted on September 10, 2001. Compl. at ¶ 18. However, it is undisputed that the Town denied Plaintiff's application because his property was not zoned for outdoor storage. It is also undisputed that Plaintiff never submitted an application to have his property rezoned, even though he received the paperwork to do so. Nor did Plaintiff submit a revised permit application removing the request for outside storage and requesting only land clearing. Under these circumstances, Plaintiff has not pursued all of the local administrative remedies available to him. Consequently, Plaintiff has not received a final decision, and this claim is not ripe for judicial review.

## II. Plaintiff's Claim Against Joseph Canizzaro is Dismissed

Plaintiff alleges that Defendant Canizzaro "stopp[ed] a legitimate draining project, without citing a clear understandable relevant statute in the Town of Islip ordnances [sic]." Compl. at ¶ 20. Instead, the stop work order issued by Defendant Canizzaro "disclosed a vague and ambiguous statute and relied upon such as excavating without a permit," but it is "[u]nclear as to what the statute or ordnance [sic] means." *Id.*

8

The stop work order, which Plaintiff attached to his complaint, clearly indicates that the

excavation work was in violation of Chapter 15, Section 3 of the Town Code. That provision of

the Town Code provides:

> Before any excavation is commenced for any purpose . . . and topsoil, earth, sand,
> gravel, rock or other substance is removed from the ground, the owner, lessee or
> agent of the premises *shall obtain a written permit* therefor from the Town Board.
> For that purpose such applicant shall file with the Building Inspector of the Town
> of Islip a verified application in duplicate for such permit, containing a detailed
> statement of the proposed work, together with a plan prepared by a duly licensed
> engineer or land surveyor of the State of New York . . . .

Kretzing Decl., Ex. 11 (emphasis added).

Plaintiff admitted in his deposition that he had been excavating an area on his property

that was about forty feet by forty feet. Javino Dep. at 92:5–10. The excavation was

approximately thirty feet deep. *Id.* at 92:11–12. It is also undisputed that Plaintiff did not have a

permit for this excavation. *Id.* at 92:13–21.

Contrary to Plaintiff's argument, the Town Code's prohibition on excavation is neither

vague nor ambiguous. The code clearly states that a permit is required prior to the removal of

any topsoil, earth, sand, gravel, rock, or other substance from the ground. Moreover, Plaintiff's

activities, which included digging a hole approximately thirty feet deep, is plainly within this

definition of excavation. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)

(the plain meaning of legislation is generally conclusive).

Plaintiff argues that his excavation was necessary because he was correcting drainage

problems from an earlier excavation undertaken by a neighbor. Pl.'s Opp. to Town Defs.' Mot.

for Summ. J. at 3. However, Plaintiff has provided no evidence that he could not have applied

for a permit for this activity or that a permit was denied. Plaintiff's claim against Defendant

Canizzaro for failing to cite a clear and relevant statute is therefore dismissed with prejudice.

**III.     Plaintiff's Claim Against the Town of Islip for Violating His Property Rights is Dismissed**

Plaintiff's complaint included a cause of action against the Town for having "broke into privately owned property." Compl. at ¶ 19. Taking this claim to raise the strongest arguments it suggests, as this Court must with a *pro se* Plaintiff, *see Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–92 (2d Cir. 2008), this Court interprets Plaintiff's claim to raise a federal Fourth Amendment claim for a warrantless seizure, and a state law claim for trespass.

However, Plaintiff has not presented any allegation or evidence that employees of the Town "broke into" his property. To the contrary, in his affidavit in support of his summary judgment motion, Plaintiff stated that Defendants Yager and Mead, who are employees of a state agency, entered his property without a warrant. Pl.'s Aff. at ¶ 3. Similarly, in his complaint, Plaintiff alleged only that state DEC employees entered his land. *Id.* Plaintiff has not alleged or provided any evidence that any Town employee entered his land at any time, with or without a warrant. Consequently, Plaintiff's claim against the Town for violating his property rights is dismissed with prejudice. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (a municipality may be held liable only where its "failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation").

**IV.     Plaintiff's Claim Against Defendants Yager and Mead for Violating His Property Rights is Dismissed**

Pursuant to the Court's decision of March 31, 2008, the only remaining claim against Defendants Yager and Mead is for injunctive relief to require them to obtain a search warrant before entering Plaintiff's land. As it did with Plaintiff's claim against the Town, this Court interprets Plaintiff's claim to raise a federal Fourth Amendment claim for a warrantless seizure, and a state law claim for trespass.

The Fourth Amendment to the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  This prohibition on unreasonable searches and seizures is applicable to commercial premises as well as private homes, and extends to both traditional police searches and administrative inspections designed to enforce regulatory statutes.  *New York v. Burger*, 482 U.S. 691, 699–700 (1987); *Donovan v. Dewey*, 452 U.S. 594, 598 (1981). Nevertheless, the expectation of privacy in commercial premises is less than that for an individual's home, and is particularly attenuated in industries that are closely regulated by the state. *Burger*, 482 U.S. at 700.

Although the Fourth Amendment generally requires the issuance of a search warrant or the existence of probable cause before a search may be conducted, some searches may be performed without either. *See, e.g.*, *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 829–30 (2002).  For example, "searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)); *see also Burger*, 482 U.S. at 702 ("[W]here the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment."); *Donovan*, 452 U.S. at 599; *Palmieri v. Lynch*, 392 F.3d 73, 79 (2d Cir. 2004).

In determining whether regulatory searches are reasonable under the "special needs" doctrine, and therefore not subject to the warrant requirement, a court must weigh three factors:

11

(1) the nature of the privacy interest allegedly compromised by the challenged governmental conduct, (2) the character of the intrusion imposed by the challenged conduct, and (3) the nature and immediacy of the state's concerns and the efficacy of the government conduct in meeting them. *Palmieri*, 392 F.3d at 81.

## A. The Nature of the Privacy Interest

As already noted, an individual may have an expectation of privacy in a commercial premise, although that expectation of privacy is less than that for an individual's home, and is particularly attenuated in industries that are closely regulated by the state. *Burger*, 482 U.S. at 699. Among the industries closely regulated by the state are those in mining, excavation, and construction. *See, e.g.*, N.Y. Envtl. Conserv. Law § 23-2711 (requiring a permit to mine more than 750 cubic yards of minerals in a twelve-month period); N.Y. Envtl. Conserv. Law § 23-2713 (requiring a mined land-use plan before any mining may occur); N.Y. Gen. Bus. Law §§ 763, 764 (prohibiting excavation work unless timely notice is served to operators who maintain underground facilities in the area in which the excavation or demolition is to take place); N.Y. Lab. Law § 241 (requiring areas being excavated to be constructed, shored, equipped, guarded, arranged, operated and conducted as to provide "reasonable and adequate protection and safety" to the persons employed therein). These industries are closely regulated, in part, because they present unique safety concerns to workers and those who may enter the area affected. *See, e.g.*, 30 U.S.C. § 801 (stating that the Federal Mine Safety and Health Act of 1977 was passed in response to "the existence of unsafe and unhealthful conditions and practices" in the mining industry); *Donovan*, 452 U.S. at 602 ("[I]t is undisputed that there is a substantial federal interest in improving the health and safety conditions in the Nation's underground and surface mines.").

Privacy interests are also significantly diminished when the area searched is exposed to the public and thus is already subject to visual inspection. "[V]isual observation is no 'search' at

all," *Kyllo v. United States*, 533 U.S. 27, 32 (2001), and "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes," *Arizona v. Hicks*, 480 U.S. 321, 328 (1987).  For example, in *Palmieri v. Lynch*, the Second Circuit held that a homeowner whose property had been entered by a DEC employee for an inspection had an "unquestionably diminished" expectation of privacy in his home's backyard and deck because these areas, although nominally fenced with rope, were "completely exposed to public view."  392 F.3d at 82–83; *see also Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *5 (E.D.N.Y. June 30, 2010) (Seybert, J.) ("Plaintiffs had a minimal expectation of privacy on their front lawn . . . [because] [a]nything that the Town inspected was entirely visible to the public.").

In this case, Plaintiff had even less of an expectation of privacy than the plaintiff in *Palmieri*.  First, unlike the facts in *Palmieri*, which concerned a homeowner's backyard and deck, it is undisputed that Plaintiff's property was industrial land.  Plaintiff's commercial land is unquestionably less private than *Palmieri*'s residential property.  *See Burger*, 482 U.S. at 699.  Second, as in *Palmieri*, Plaintiff's land was clearly visible to all passersby, since the chain link fence surrounding the property did not in any way obscure the view of Plaintiff's land.  Third, it is undisputed that Plaintiff had a major excavation project taking place on his land, which had already resulted in a hole forty feet long, forty feet wide, and thirty feet deep.  Such substantial excavation work subjected Plaintiff's property to numerous statutes and regulations, regardless of whether he chose to comply with those regulations by seeking a permit, and further diminished Plaintiff's reasonable expectation of privacy in his property.  For all of these reasons, the Court finds that Plaintiff had an "unquestionably diminished" expectation of privacy in his property.  *See Palmieri*, 392 F.3d at 83.

**B. The Character of the Intrusion**

The second factor the Court must consider in determining whether the regulatory search of Yager and Mead was reasonable is the character of the intrusion imposed by their conduct. *Palmieri*, 392 F.3d at 81. An intrusion is more likely to be classified as "minimal" if (1) the official's sole purpose in entering the property was to conduct a regulatory inspection; (2) the employee sought to visually inspect areas outside plaintiff's home, rather than the interior of his house, his personal property, his person, or any closed containers; (3) the employee left the premises when asked; and (4) the employee was on the premises for only a few minutes. *Id.* at 84.

In this case, it is undisputed that Yager and Mead's sole purpose in entering Plaintiff's property was to conduct a regulatory inspection. Yager and Mead went to Plaintiff's property only after receiving a call from a concerned neighbor about excavation on Plaintiff's property. From outside Plaintiff's property, Yager and Mead observed through the fence substantial excavation work on the property, which had already resulted in a hole forty feet long, forty feet wide, and thirty feet deep. Concerned about possible illegal mining and the potential for cave-ins, Yager and Mead then entered Plaintiff's property to inspect further.

Plaintiff does not dispute that Yager and Mead entered his property solely to conduct a regulatory inspection. *See* Pl.'s Aff. in Supp. of Summ. J. Rather, Plaintiff argues that "[b]oth officers admit entering the land without a search warrant or permission by the owner myself. I believe they said they didn't know who the owner was and there was no posted 'no trespassing' signs. It is my simple argument that the officers should have known better . . . ." *Id.* at ¶ 3.

It is also undisputed that Yager and Mead conducted only a visual inspection of Plaintiff's property and did not take anything from the property. Although Plaintiff's original complaint alleged that it was his "belief" that Yager and Mead took soil samples, *see* Compl. at ¶

14

12, Plaintiff has not come forward with any evidence that soil samples or anything else was taken from his property.

Finally, it is undisputed that Yager and Mead were on Plaintiff's property for no more than twenty minutes and left when asked. In light of these facts, which are nearly identical to those in *Palmieri*, this Court concludes the intrusion by Yager and Mead was minimal.

### C. The Nature and Immediacy of the State's Concerns

The last factor this Court must consider is the nature and immediacy of the state's concerns when its employees entered Plaintiff's property, and the efficacy of the government conduct in meeting those concerns. *Palmieri*, 392 F.3d at 81. As this Court has already found, Yager and Mead's sole purpose in entering Plaintiff's property was to investigate the possibility of illegal mining and the potential for cave-ins due to the substantial excavation taking place on Plaintiff's property. Further, and as previously discussed, mining, excavation, and construction are all industries heavily regulated by the state because of the unique public safety concerns posed by those industries. As such, this Court concludes that the government's interest in investigating possible illegal mining and the potential for a cave-in is serious and substantial.

Moreover, an agency may be credited, rather than punished, for "diligently seeking to effectuate its statutory and regulatory mandate to inspect . . . areas" subject to heightened state regulation. *Id.* at 85. Thus, even if this Court were to find Yager and Mead "lacked an *immediate* need to inspect the at-issue areas, this does not mean that no inspection was required or appropriate." *Id.*

### D. The Regulatory Search was Reasonable

The privacy interest in the commercial property of the Plaintiff was minimal. The intrusion by Yager and Mead was minimal. The interest of the state was substantial. The Court

15

holds that the regulatory search conducted by Yager and Mead was reasonable and not subject to the warrant requirement. The Court dismisses the claims against Yager and Mead. *Id.* at 81.

## CONCLUSION

For the reasons stated above, this Court denies Plaintiff's motion for summary judgment in its entirety. The Court grants the summary judgment motions of the Town Defendants and the DEC Employee Defendants in their entirety, and dismisses with prejudice Plaintiff's claims against Defendants. Because no claims in this case survive summary judgment, the Clerk is directed to enter judgment in favor of Defendants and close this case.

**<u>SO ORDERED</u>**

Dated: Brooklyn, New York
      May 10, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

16